UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**STEPHANIE LOGSDON SMITH, ET AL.**                              **PLAINTIFF**

**v.**                                                     **No. 3:21-cv-288-BJB-CHL**

**COMMONWEALTH OF KENTUCKY**                                     **DEFENDANT**

### OPINION & ORDER

Stephanie Logsdon Smith, Bridgett Dennis, and Cammie Musinski (through her estate) allege that a state probation officer repeatedly sexually abused them while his supervisor concealed a complaint about the officer's behavior. Both lost their state jobs for this conduct, and the probation officer faces related criminal charges.

Understandably, the victims want justice and compensation. But they filed this lawsuit against the Commonwealth of Kentucky and the Governor, not the probation officer or his supervisor. The Complaint seeks $30 million in compensatory damages and $90 million in punitive damages under 42 U.S.C. § 1983 for violations of the U.S. Constitution's Thirteenth Amendment, which abolished slavery and involuntary servitude. DN 1 at ¶¶ 1, 5, 6, 20, 111, 116.

The Defendants moved to dismiss based on the Commonwealth's sovereign immunity and because "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." DN 6 at 3 (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). In response, Plaintiffs amended their complaint (DN 7) to eliminate its reliance on § 1983 and drop their claim against the Governor. DN 7; First Opp. Br. (DN 8) at 2. But this created a new problem: What is the cause of action against the Commonwealth? And why would it overcome state sovereign immunity? *See* Second Motion to Dismiss (DN 10) at 4–5.

All the answers, Plaintiffs say, may be found within the Thirteenth Amendment itself. According to their second opposition brief, the constitutional text both creates a cause of action for damages *and* abrogates sovereign immunity. DN 11 at 3, 9, 13. Because neither contention is correct, the Court must dismiss this lawsuit.

### A. The Thirteenth Amendment does not provide a cause of action for damages

Plaintiffs may not bring a civil lawsuit for any and all perceived violations of the law. They must have a "legal entitlement to sue," also known as a cause of action, which depends on "some legal authority (*e.g.*, a statute) that allows the plaintiff to come into court in the first place." Samuel L. Bray & Paul B. Miller, *Getting Into*

*Equity*, 97 NOTRE DAME L. REV. at 10 (forthcoming 2022) (Oct. 28, 2021 draft); *see Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Typically, a cause of action must come from some legal source that creates a private remedy. *See Alexander*, 532 U.S. at 286. While courts in prior decades have interpreted several legal provisions to imply the existence of a cause of action, the Supreme Court has cautioned against inferring new causes of action unless Congress' intent to create a private remedy is clear from the text and structure of the law. *See id.* 288. The same holds true, only more so, for causes of action based on the text of the Constitution alone. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855–56 (2017).

Yet Plaintiffs root their legal right to sue the Commonwealth in § 1 of the Thirteenth Amendment itself, relying on precedent, text, and context. Each argument, however, ultimately reflects the absence of a direct cause of action.

**1. Precedent.** Plaintiffs describe this as "a case of first impression," Second Opp. Br. (DN 11) at 1, asserting that no reported opinion has held that a citizen *cannot* sue a state directly for damages "in federal court for violation of the prohibition against involuntary sexual servitude of U.S. Const. amend. XIII," First Opp. Br. (DN 8) at 3. Perhaps not, when the question is framed in that very particular way. Although the Sixth Circuit has, as the Commonwealth emphasizes, "long held that § 1983 provides the *exclusive* remedy for constitutional violations," at least concerning damages for the violation of rights protected by the Fourteenth Amendment. Second Motion to Dismiss (DN 10) at 4 (quoting *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014)). And other courts have rejected the notion that the Thirteenth Amendment created a cause of action for damages to remedy involuntary servitude. *See Beauregard v. Lewis Cnty.*, 329 F. App'x 710, 712 (9th Cir. 2009) (neither the Thirteenth nor Fourteenth Amendments directly create a cause of action for damages); *Gomez v. Kern*, 2012 WL 1069186, at *2 (S.D. Fla. Mar. 29, 2012) ("[T]he Thirteenth Amendment, by itself, does not provide a private cause of action" for involuntary servitude; rather, "a plaintiff must proceed under one of the Thirteenth Amendment's implementing statutes.") (collecting cases). As Plaintiffs acknowledge, no caselaw recognizes a damages cause of action that is express or implied in the Thirteenth Amendment. Second Opp. Br. (DN 11) at 1.

Despite the lack of contemporary precedent applying a constitutional damages remedy, Plaintiffs contend that the Supreme Court's 1883 decision in the *Civil Rights Cases* recognized that the Thirteenth Amendment was "undoubtedly self-executing" in establishing a cause of action, even "without any ancillary legislation" from Congress implementing the Amendment's prohibitions. Second Opp. Br. at 3 (quoting 109 U.S. 3, 20). "By its own unaided force," Plaintiffs explain, the Amendment "abolished slavery, and established universal freedom." *Id.* at 20 (quoting 109 U.S. at 20–21). But Plaintiffs' invocation of the *Civil Rights Cases*—not generally remembered for a broad embrace of private civil-rights enforcement, *cf.* 109 U.S. at 61–62 (Harlan J., dissenting)—likewise says nothing about private damages. And reading the passage on which Plaintiffs rely in its fuller context undermines

Plaintiffs' interpretation of the Thirteenth Amendment to directly authorize federal courts to hear damages suits, without the need for any further legislative action:

> This amendment, as well as the Fourteenth, is undoubtedly self-executing without any ancillary legislation, so far as its terms are applicable to any existing state of circumstances. By its own unaided force it abolished slavery, and established universal freedom. Still, *legislation may be necessary and proper* to meet all the various cases and circumstances to be affected by it, and *to prescribe proper modes of redress* for its violation in letter or spirit. And such legislation may be primary and direct in its character; for the amendment is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States.
>
> It is true that slavery cannot exist without law any more than property in lands and goods can exist without law, and therefore the Thirteenth Amendment may be regarded as nullifying all State laws which establish or uphold slavery. But it has a reflex character also, establishing and decreeing universal civil and political freedom throughout the United States; and it is assumed that *the power vested in Congress to enforce the article by appropriate legislation*, clothes Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery.

*Civil Rights Cases*, 109 U.S. at 20–21 (emphases added).

This passage makes plain the critical distinction between the Amendment's two sections, echoed in the separate roles for courts and Congress, all of which reveals even greater flaws in Plaintiffs' position.

**2. The Text of the Thirteenth Amendment.** Enacted in the aftermath of the Civil War, the Amendment eradicated the great evil of slavery in America. Section 1 proclaims that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." This prohibits slavery; it says nothing about private plaintiffs suing for damages if public actors violate that prohibition. Crucially, § 2 adds that "Congress shall have power to enforce this article by appropriate legislation." By adverting to Congress, rather than the courts, § 2 moves even further from Plaintiffs' desired inference that the framers and ratifiers of the Thirteenth Amendment directly created a cause of action for damages.

True, the Amendment *does* have a self-executing effect. But that effect is to nullify contrary state laws, not to create damages actions. As the *Civil Rights Cases* recognized, "the Thirteenth Amendment may be regarded as nullifying all State laws which establish or uphold slavery." 109 U.S. at 20. If someone was still held in slavery after 1865, for example, he or she could assert rights under the Thirteenth Amendment in a suit to shield the plaintiff from a state slavery law that might've otherwise authorized servitude. *Id.* at 20–21. Nothing indicates that plaintiff had a claim for damages based solely in the federal constitution, however; a right to sue historically rooted in equity or habeas, for example, would've been a more natural fit. As one of Plaintiffs' cited cases illustrates, a plaintiff could seek a writ of habeas ordering release from slavery under the Thirteenth Amendment. *See In re Sah Quah*, 31 F. 327, 330–31 (D. Alaska 1886) (utilizing habeas remedy to free an escaped slave from bondage imposed by a fellow member of an Indian tribe).[1]

Yet Plaintiffs do not allege that any state law violates the Thirteenth Amendment. Nor do they rely on a traditional claim—rooted in common law, equity, or habeas—to overcome state action that violates the Thirteenth Amendment. Instead, they seek damages against the state due to a state employee's past sexual abuse. But damages are a legal remedy that operates retrospectively; this species of relief typically requires a statutory or common-law cause of action. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of legal relief."); *see also Curtis v. Loether*, 415 U.S. 189, 195–96 (1974); *Elhady v. Unidentified CBP Agents*, No. 20-1339, Slip Op. at 4 (6th Cir. Nov. 19, 2021) (creating causes of action is a "quintessentially legislative choice"). Plaintiffs point to no such cause of action under the Thirteenth Amendment that allows them to come into court to redress a past harm with a damages award. Rather, they ask this Court

---

[1] Plaintiffs' focus on a damages remedy for constitutional violations almost entirely overlooks the primary role played by these other fonts of judicial relief. After all, "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("What our cases demonstrate is that, in a proper case, relief may be given in a court of equity to prevent an injurious act by a public officer.") (quotation omitted). *See also Ziglar*, 137 S. Ct. at 1862–63 (damages not available for constitutional violations if "injunctive relief" and the "writ of habeas" are). And a plaintiff could sue a state official to enjoin the enforcement of a slavery law under *Ex Parte Young*, which recognized an equitable cause of action (of sorts) to enjoin constitutional violations. *See* 209 U.S. 123, 149 (1908); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 475 (5th Cir. 2020) (en banc) (concluding that *Ex Parte Young* created an equitable cause of action). Although to this day scholars and judges continue to debate whether the equitable source of and justifications for *Ex Parte Young* reflect a long-standing equitable action known as an anti-suit injunction, *see* John Harrison, *Ex Parte Young*, 60 STAN. L. REV. 989, 997–99, 1014–18 (2008); *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 905–06 (6th Cir. 2014), or rather a natural evolution of historical equitable jurisdiction, *see generally* James E. Pfander, Jacob P. Wentzel, *The Common Law Origins of Ex Parte Young*, 72 STAN. L. REV. 1269 (2020).

4

to infer that such a cause of action inheres in the text and history of the Thirteenth Amendment.

Doing so, however, would completely ignore the Amendment's second section: "*Congress* shall have power to enforce this article by appropriate legislation." The very passage from the *Civil Rights Cases* on which Plaintiffs rely most heavily makes clear that the Amendment assigns Congress—not courts—principal authority "to prescribe proper modes of redress," beyond the invalidation of state slavery laws, through "legislation [that] may be necessary and proper." 109 U.S. at 20–21 (discussing Amend. XIII § 2). In other words, the Amendment's first section nullifies state slavery laws, while the "reflex character" of its second section authorizes Congress to "enforce" freedom from slavery through legislation. *Id*. at 20.

Many courts have recognized that Congress' authority under § 2 allows it to provide "proper modes of redress," which could include creating damages actions. *See id*. In *Jones v. Alfred H. Mayer Co.*, the Supreme Court rejected a constitutional challenge to a statutory remedy for race-based housing discrimination, acknowledging that the Thirteenth Amendment itself "abolished slavery," while granting Congress "power to pass all laws necessary and proper for abolishing all badges and incidents of slavery." 392 U.S. 409, 439 (1968). *See also Griffin v. Breckenridge*, 403 U.S. 88, 95 (1971) (Section 2 of the Thirteenth Amendment invested Congress with authority to create a damages action based on private conspiracy to violate civil rights).

Plaintiffs argue that § 2 is limited to regulating the "badges and incidents of slavery," not direct acts of slavery like the ones they allege happened in this case. Second Opp. Br. at 3 (quoting *Channer v. Hall*, 112 F.3d 214, 217 n.5 (5th Cir. 1997) (suggesting in dicta that § 2 is limited to causes of action to redress the badges of slavery)). It is true that the Supreme Court has long held that § 2 authorizes Congress to legislate concerning the badges and incidents of slavery. *See Civil Rights Cases*, 109 U.S. at 20. But Plaintiffs offer no authority supplying a precise definition of the "badges and incidents of slavery" that would exclude the facts of this case from Congress' reach. *Cf. Jones*, 392 U.S. at 438–44 (interpreting the scope of the Thirteenth Amendment to reach "badges and incidents of slavery" such as private housing discrimination); Jennifer Mason McAward, *Defining the Badges and Incidents of Slavery*, 14 U. PA. J. CONST. L. 561, 605–06 (2012) (arguing Congress has primary authority for defining and regulating the badges and incidents of slavery).

Nor do Plaintiffs offer any support for the notion that Congress may only legislate concerning the badges and incidents of slavery, and not slavery itself, or that (even if true) this would imply a direct cause of action for actual slavery. Indeed, Congress has used its § 2 authority to criminalize instances of slavery and peonage. *See, e.g.*, Anti-Peonage Act of 1867 (outlawing, 18 U.S.C. § 1994, and criminalizing, 18 U.S.C. § 1581, a type of debt slavery common in New Mexico); *United States v. Kozminski*, 487 U.S. 931, 945 (1988) (18 U.S.C. § 1584, enacted under § 2, provided

5

criminal punishments for knowingly and willfully holding another "to involuntary servitude" as described in § 1); *United States v. Roof*, 10 F.4th 314, 394–95 (4th Cir. 2021) (Hates Crimes Act, 18 U.S.C. § 249(a)(1), recognized as valid application of Congress' § 2 authority).

Indeed, Congress has used its authority under § 2 to create private remedies for harms similar to those alleged in this case: imposing badges of slavery and holding someone in involuntary servitude. And courts have upheld the exercise of this authority. *See, e.g., Runyon v. McCrary*, 427 U.S. 160, 179 (1976) (damages for private conduct, under § 1981a, was validly enacted under Congress' § 2 authority). One statute enacted under § 2 appears even more directly applicable. The Victims of Trafficking and Violence Protection Act of 2000 criminalized—*and made privately enforceable through damages actions*—acts of peonage, slavery, involuntary servitude, and forced labor. *See* TVPA, Pub. L. No. 106-386, § 102(b)(1), (12)–(13), (22) (codified at 18 U.S.C. §§ 1589–91); 18 U.S.C. § 1595(a) (civil damages) (2003 amendments to TVPA). Courts have interpreted this law to cover some types of repeated sexual abuse. *See Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) (Souter, J.) (reversing dismissal of TVPA damages suit that alleged commercialized sexual abuse); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 515–17 (S.D.N.Y. 2018) (broadly reading civil-remedy provision to apply to sex abuse). And some plaintiffs have brought TVPA claims against employees working for a government entity. *See Bridges v. Poe*, 487 F. Supp. 3d 1250, 1263 (N.D. Ala. 2020) (allowing civil claims under TVPA against state jailers for sexual servitude); *Roe v. Howard*, 917 F.3d 229, 236 (4th Cir. 2019) (upholding application of civil remedy to sexual abuse by government employee serving overseas); *Gonzalez v. CoreCivic, Inc.*, 986 F.3d 536, 537 (5th Cir. 2021) (upholding application of civil remedy against private facility detaining immigrants on behalf of the federal government).

So Congress has used § 2 to target both the badges and incidents of slavery and slavery itself with criminal and civil remedies, including damages. And while courts may rely on § 1 alone to enjoin contrary state laws, a damages remedy would require an act of Congress. *See Alma Soc. Inc. v. Mellon*, 601 F.2d 1225, 1237 (2d Cir. 1979) ("Notwithstanding Congress's broad authority to legislate under § 2 of the Amendment, the [Supreme] Court has directly invoked the Amendment only to strike down state laws imposing the condition of peonage." (internal citations omitted)). As the Ninth Circuit aptly put it, "[r]egardless of whether the text of the Thirteenth Amendment itself admits of the self-enforcing construction that [Plaintiff] attaches to it, she cannot possibly assert a right to damages on account of it." *Cato v. United States*, 70 F.3d 1103, 1110 (9th Cir. 1995).

At this late date, few justifications remain for recognizing the *Bivens*-style remedy that Plaintiffs effectively request. *See Abbasi*, 137 S. Ct. at 1857 ("expanding the *Bivens* remedy is now a 'disfavored' judicial activity"); *Alexander*, 532 U.S. at 286. Much less a new *Bivens*-for-states variant. Even assuming these justifications did exist, when—as here—Congress has made "alternative methods of relief … available,

6

a *Bivens* remedy usually is not." *Id.* at 1863. Congress' remedies needn't be "perfectly congruent" nor "provide complete relief" to militate against judge-made remedies, *Minneci v. Pollard*, 565 U.S. 118, 129 (2012), particularly given the inherent separation-of-powers, federalism, and "risk of interference" concerns that Plaintiffs' novel theory raises, *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020). Nothing indicates that the express civil-damages provisions enacted as part of statutes authorized by § 2 were redundant with the sort of implied cause of action Plaintiffs perceive in § 1 of the Thirteenth Amendment itself.

**3. The Neighboring Fourteenth Amendment.** Plaintiffs spill plenty of ink over the inferences that courts should and shouldn't draw from extensive judicial examination of *congressional* efforts to create *statutory* damages remedies against state actors under the Fourteenth Amendment. But examining the limits of Congress' legislative authority under § 5 of the Fourteenth Amendment cuts against Plaintiffs' position: no caselaw cited by Plaintiff or known to this Court indicates that the neighboring amendment contains a direct cause of action for damages, or that any such hypothetical right would extend to the Thirteenth Amendment in any event.

The Supreme Court has compared the Thirteenth Amendment to the Fourteenth, which it has described as "self-executing." *Civil Rights Cases*, 109 U.S. at 20–21. But as discussed above, *see* A.3, that just begs the question: what *legal* rights does the constitutional text secure without the need for congressional action? Not a cause of action for damages. An *equitable* remedy may be available, by contrast, to enjoin an ongoing violation of the Equal Protection Clause even without implementing legislation. *See Papasan v. Allain*, 478 U.S. 265, 282, n.14 (1986) (citing *Ex Parte Young*, 209 U.S. 123, 126, 149 (1908), which affirmed an injunction to enforce Fourteenth Amendment rights). But the Supreme Court has made crystal clear that this right to enforce the Constitution against state actors extends only to equitable "prospective" relief. *Edelman v. Jordan*, 415 U.S. 651, 664–66 (1974). For retrospective damages, parties must rely on a statute to vindicate their Fourteenth Amendment rights. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 447–48 (1976) (Title VII, enacted under § 5 of the Fourteenth Amendment, authorized damages to remedy state officials' discriminatory actions). Most often, that statute is 42 U.S.C. § 1983, which Plaintiffs disavowed in this case. *See* First Opp. Br. (DN 8) at 2; *Richardson v. City of S. Euclid*, 904 F.2d 1050, 1052 (6th Cir. 1990) ("A state induced deprivation of liberty can provide a valid basis for claiming section 1983 damages pursuant to the fourteenth amendment.").

In fact, Congress enacted § 1983 itself under the authority conferred by the enforcement provision of the Fourteenth Amendment, authorizing parties to recover damages for some state officials' violations of their constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 685, n.45 (1978); *Monroe v.*

*Pape*, 365 U.S. 167, 171–72 (1961).² And at least for rights protected by the Fourteenth Amendment, several courts have said that § 1983 is the sole source of authority for private plaintiffs to pursue damages against state actors. *See, e.g.*, *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) ("To the extent that Appellants attempt to assert direct constitutional claims, they fail; we have long held that § 1983 provides the exclusive [damages] remedy for constitutional violations"); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("[A] litigant complaining of a constitutional right must utilize 42 U.S.C. § 1983."); *Sanders v. Walmart Stores, Inc.*, 2016 WL 6246361, at *2 (W.D. Ky. Oct. 24, 2016) (same).

Ascribing a broader, "self-executing" damages remedy to the Thirteenth Amendment, but not the Fourteenth, would make little sense. *See Civil Rights Cases*, 109 U.S. at 20–21. The Fourteenth Amendment required legislation to supply a cause of action for damages. *See Fitzpatrick*, 427 U.S. at 447–48. Why wouldn't the Thirteenth? Nothing in its text implies a direct cause of action absent from the text of the Fourteenth Amendment. Other Amendments bar government conduct with at least equal clarity: "Congress shall pass no law … abridging the freedom of speech," for instance. U.S. CONST. amend. I § 1. Yet such amendments likewise create no direct cause of action for damages. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 390 (1983) (rejecting *Bivens* cause of action for damages under the First Amendment in deference to Congress' choice of right and remedy, if any); *Heffernan v. City of Paterson*, 578 U.S. 266 (2016) (resting First Amendment damages claim on congressional authorization of enforcement suit under § 1983).

\* \* \*

Given the lack of support in precedent, text, or context for recognizing a "self-executing" cause of action for damages under the Thirteenth Amendment, the Court declines to concoct one now, and must dismiss Plaintiffs' claim. The Thirteenth Amendment nullified state slavery laws. That by itself was a good day's work, but the framers didn't stop there. They authorized Congress—in § 2 of the Thirteenth Amendment—to enact enforcement legislation. And Congress has repeatedly exercised this authority. Neither text nor precedent empowers individual judges to go further. That may strike Plaintiffs as a bug. But it is a critical feature of our constitutional order.

### B. The Thirteenth Amendment does not abrogate sovereign immunity against damages actions

Even if the Plaintiffs had a cause of action, Kentucky maintains its sovereign immunity and asserts it here as a defense. Historically, a "sovereign could not be

---

² Defendants also argue that Plaintiffs fail to state a claim against the Commonwealth under *Monell*, 436 U.S. at 691, and that the claims are time barred. Since these arguments address claims brought under § 1983, which the Plaintiffs no longer rely on, both points are moot.

sued without its consent." *Alden v. Maine*, 527 U.S. 706, 715–716 (1999). And the Supreme Court has recognized that this longstanding doctrine, derived from the common law and law of nations, bars even a suit by a citizen against his or her own state. *See Franchise Tax Bd. of California v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) (citing *Hans v. Louisiana*, 134 U.S. 1, 18 (1890)). Unlike Eleventh Amendment immunity proscribing suits against states by non-citizens, immunity against a suit by a state's own citizen may be waived by the state or abrogated by Congress. William Baude & Stephen Sachs, *The Misunderstood Eleventh Amendment*, 169 U. PA. L. REV. 609, 611–14 (2021) (contrasting sovereign immunity's historical framework with current doctrine). Courts strictly construe both waiver and abrogation, requiring a clear and unequivocal expression of intent by the state or Congress. *Sossamon v. Texas*, 563 U.S. 277, 284–85 (2011) (waiver); *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 55 (1996) (abrogation).

The Sixth Circuit has made clear that the Thirteenth Amendment did not directly abrogate sovereign immunity. *Foulks v. Ohio Department of Rehabilitation & Correction* held that 42 U.S.C. § 1981—enacted under enforcement authority conferred by § 2 of the Thirteenth Amendment—lacked the "clear congressional purpose" necessary to abrogate sovereign immunity. 713 F.2d 1229, 1233 (6th Cir. 1983); *see Sheils v. Bucks Cnty. Domestic Rels. Section*, 921 F. Supp. 2d 396, 405–06 (E.D. Pa. 2013). If the Thirteenth Amendment alone abrogated state sovereign immunity, as Plaintiffs contend, then the Sixth Circuit wouldn't have had any need to even confront this question. And if even a statute enacted under the enforcement provision of § 2 did not abrogate sovereign immunity, the likelihood that the text of § 1 did so on its own is vanishingly small.

Similarly, the D.C. Circuit has observed, in the context of tribal sovereignty, that "[n]othing in § 1 of the Thirteenth Amendment so much as hints at a federal court suit by a private party to enforce the prohibition against badges and incidents of slavery ..." *Vann v. Kempthorne*, 534 F.3d 741, 748 (D.C. Cir. 2008) (sovereign immunity barred a suit against a tribe for badges and incidents of slavery, though it tolerated a suit against tribal officials under *Ex Parte Young*). While Congress conceivably could abrogate sovereign immunity under § 2, consistent with the Supreme Court's precedents on this subject, the legislative branch has not seen fit to do so. *See id.* Instead, when parties seek to overcome state sovereign immunity in order to sue over a constitutional violation, they rely on *Ex Parte Young* to seek prospective relief against the state official responsible for enforcing or implementing the law in question. *Id.* at 749–50.

The Ninth Circuit has applied this logic outside of the badges-and-incidents context, holding that even if § 1 created a direct cause of action concerning slavery, this would not waive sovereign immunity against damages. *Cato*, 70 F.3d at 1110–12 (upholding sovereign immunity of United States against claim for damages based on history and consequences of slavery). As with Plaintiffs' purported cause of action, so too with sovereign immunity: they point to no statute in which Congress even

9

arguably abrogated sovereign immunity in cases like this. Instead they put all their eggs in the basket of the Thirteenth Amendment—whose text and precedent cannot bear that weight.

The framers did not abrogate state sovereign immunity against citizen suits for damages. Plaintiffs' contrary argument emphasizes that the Thirteenth Amendment speaks directly to states, three-fourths of which had to consent to the Amendment. So, in Plaintiffs' view, the states must have also consented to waive their immunity. That doesn't follow—not as a matter of logic or interpretation: "the 13th Amendment names no party or authority, but simply forbids slavery and involuntary servitude, grant[ing] to Congress power to enforce this prohibition by appropriate legislation." *Clyatt v. United States*, 197 U.S. 207, 216 (1905). "The prohibitions of the 14th and 15th Amendments," by contrast, "largely [address] the acts of the states." *Id*. Despite that textual hook, absent here, these amendments don't directly abrogate sovereign immunity; Congress still must use its enforcement authority to clearly abrogate immunity. *See Fitzpatrick*, 427 U.S. 457. Not even § 1983 abrogates state sovereign immunity, despite its passage under the same enforcement clause as Title VII. *See Brent v. Wayne County Dep't of Hum. Servs.*, 901 F.3d 656, 683 (6th Cir. 2018) (neither Due Process Clause nor § 1983 abrogates state sovereign immunity). Instead, the statute allows suits only against state officials in their personal capacities, precisely because courts have interpreted Congress *not* to have unequivocally expressed its intent to abrogate the states' immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979).

Plaintiffs point to the Constitution's Bankruptcy Clause, which *does* directly abrogate immunity without the need for legislative action. The Clause does so, the Supreme Court recently explained, because it rests "on a different plane, governed by principles all its own." *Allen v. Cooper*, 140 S. Ct. 994, 1002–03 (2020). If true for bankruptcy, Plaintiffs' ask, why not slavery? The answer is that abrogation of immunity in the bankruptcy context rested on history and logic unique to that clause. The Supreme Court made that clear in *Allen* when it refused to import the logic of "bankruptcy exceptionalism" to copyrights. *Id*. (the "'singular nature' of bankruptcy jurisdiction" was "'premised on the debtor and his estate, and not on the creditors' (including a State)"). Sovereign-immunity concerns sounded differently in this area of the law, given the framers' desire to avoid state competition over debt. *See id*. at 1002. This is why the Bankruptcy Clause *uniquely* abrogated sovereign immunity without the need of a statute, *id*. at 1003, and why it cuts *against* Plaintiffs' reading and request for a "clause-by-clause reexamination" of constitutional (as opposed to statutory) waivers. To the "contrary, it points to a good-for-one-clause-only holding." *Id*. Nothing in the *Allen* decision (or any other cited by the Plaintiffs) would extend this constitutional abrogation of immunity to the Thirteenth Amendment.

## Conclusion

The allegations in this case are awful. If true, the victims undoubtedly suffered harm and deserve relief. But the Court cannot carve a new cause of action against Plaintiffs' preferred defendants and despite Kentucky's sovereign immunity. The Constitution is not a Swiss Army knife judges carry to whittle away inconvenient aspects of state law. Not every injury—not even the most profound—finds a remedy in the U.S. Constitution. Like the Fourteenth Amendment, the Thirteenth isn't "a font of tort law to be super-imposed upon" the states. *Daniels v. Williams*, 474 U.S. 327, 332 (1986). The question is "who should decide" whether the Constitution creates a damages remedy: "Congress or the courts?" *Ziglar*, 137 S. Ct. at 1857. "The answer," the Supreme Court has reiterated, "most often will be Congress." *Id.*

Given this division of authority, the Court must grant Defendant's second motion to dismiss (DN 10), deny the first motion to dismiss as moot (DN 6), and dismiss Plaintiffs' claims with prejudice.

Benjamin Beaton, District Judge
United States District Court

November 19, 2021